**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

EDWARD R. RHODES and JEAN ANN
RHODES,

                                    Plaintiffs,

               v.                                              1:20-CV-267
                                                               (GTS/CFH)
PHOENIX ARMS,

                                    Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

Caitlin Robin & Associates, PLLC          CAITLIN ROBIN, ESQ.
30 Broad Street, Suite 702                JAMES KIEFER KIRK, ESQ.
New York, New York 10004
Attorneys for plaintiffs

Renzulli Law Firm                         CHRISTOPHER RENZULLI, ESQ.
One North Broadway – Suite 1005           ANTHONY ODORISI, ESQ.
White Plains, New York 10601              JEFFREY M. MALSCH, ESQ.
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**UNITED STATES MAGISTRATE JUDGE**

**MEMORANDUM-DECISION & ORDER**

        Presently pending before the Court is plaintiffs Edward R. Rhodes' ("Edward")

and Jean Ann Rhodes' ("Jean Ann") (collectively, where appropriate, "plaintiffs") motion

pursuant to Rules 34 and 37 of the Federal Rules of Civil Procedure seeking to compel

defendant Phoenix Arms ("defendant") "to provide full and complete responses to

Requests for Production No. 1, 2, 3, 5, 7, and 8 of [p]laintiffs' Supplemental Requests

for Production as revised on June 30, 2021 and July 16, 2021."  Dkt. No. 33 at 2.

Defendant opposes the motion.  See generally Dkt. No. 36.  For the following reasons plaintiffs' motion is granted in part and denied in part.

## I.  Background

For purposes of this motion, the Court assumes the parties' familiarity with the factual allegations, providing a brief summation of the factual and procedural background.[1]  In April 2019, Edward "purchased a single action semi-auto .22lr caliber pistol," "commonly known as the HP22[.]"  Compl. at 3, ¶¶ 5-6.  In June 2019, Edward retrieved the HP22 "which was loaded but not cocked, [and] in its holster," from a gun safe; however, the HP22 "slipped off the lower shelf and fell on the safe's dehumidifier and sequentially discharged hitting [him]."  Id. at 3, ¶ 7.  Plaintiffs allege several products liability causes of action, including negligence, strict liability, breach of implied warranty of merchantability, failure to warn, and loss of consortium.  See id. at 2-9, ¶¶ 1-37.

Defendant is a corporate business entity organized under, and located within, the State of California.  See Compl. at 2, ¶ 2; Dkt. No. 6 at 1, ¶ 2 ("Answer").  "[Defendant] designs, manufactures, distributes, and sells firearms[,] . . . including the HP-22 series of pistols."  Answer at 1, ¶¶ 3-4; Compl. at 2, ¶ 3.  "Defendant distributes and sells its firearms throughout the United States, including the State of New York."  Compl. at 2, ¶ 3; Answer at 1, ¶ 4.  Defendant generally denies liability as to all claims and sets forth over 30 affirmative defenses.  See generally Answer.

---

[1] A more thorough recitation of the factual allegations and claims can be found in plaintiffs' complaint and defendant's answer.  See Dkt. Nos. 1-1 ("Compl."), 6 ("Answer").

Plaintiffs initially served Rule 34 requests for production of "documents and tangible items" on defendant on July 8, 2020.  Dkt. No. 33-2.  On August 6, 2020, the parties filed a proposed Stipulated Protective Order to prevent defendant's disclosure of "proprietary and commercially sensitive documents . . . being made public and accessible to [d]efendant's competitors."  Dkt. No. 36 at 3; see Dkt. Nos. 14, 15.  Defendant then served responses and objections to plaintiffs' initial requests on September 24, 2020.  See Dkt. No. 33-3.  With its initial responses, defendant produced an operating instruction manual for the HP22, in addition to seven confidential design drawings of the HP22's "slide, external safety lever, safety spring, trigger bar, safety block, block spring, and pin block."  Dkt. No. 36 at 3.  Defendant characterized these documents as "related to the Subject Pistol's safety systems." Dkt. No. 36 at 3.

On May 25, 2021, plaintiffs served supplemental requests for production.  See Dkt. No. 33-4 at 1.  Defendant served responses and objections on June 21, 2021.  See Dkt. No. 33-5.  In response to defendant's objections, plaintiffs revised the supplemental requests on June 30, 2021, and again on July 16, 2021.  See generally Dkt. No. 33-6; Dkt. No. 33-8.  Nonetheless, during a July 6, 2021, phone conference with counsel, and again in written correspondence dated August 2, 2021, defendant maintained most, if not all, of its objections.  See Dkt. Nos. 33-7, 33-10.  Upon plaintiffs' request, this Court scheduled a conference with the parties' counsel to discuss the discovery dispute.  See Dkt. No. 31; 08/17/2021 Text Order.  Plaintiffs' motion followed.  See Dkt. No. 33.

## II.  Legal Standard

Under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26

> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of
> the case, considering the importance of the issues at stake in the action,
> the amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery in
> resolving the issues, and whether the burden or expense of the proposed
> discovery outweighs its likely benefit.  Information within this scope of
> discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

"A district court has broad latitude to determine the scope of discovery and to manage the discovery process."  EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012) (citing In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008)).  Pursuant to Rule 37, "following a good-faith effort to meet and confer, upon to all parties notice, 'a party may move for an order compelling disclosure or discovery.'" Siano Enders v. Boone, No. 19-CV-948 (BKS/CFH), 2021 WL 3471558, at *2 (N.D.N.Y. Aug. 6, 2021) (quoting FED. R. CIV. P. 37(a)).  "Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'"  Harris v. Bronx Parent Hous. Network, Inc., No. 18-CV-11681, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (quoting U.S. v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)).

"The party seeking discovery bears the initial burden of proving the discovery is relevant[.]"  Citizens Union of City of N.Y. v. Att'y Gen. of N.Y., 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (citing Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (citations omitted)).  During the pre-trial discovery stage, "[t]he relevance standard is construed broadly 'to encompass any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue

4

that is or may be in the case.'"  Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co., No. 09-CV-835 (DNH/TWD), 2012 WL 12896163, at *2 (N.D.N.Y. Dec. 21, 2012) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)); see also Cohen v. Altman, No. 19-CV-274 (TJM/TWD), 2021 WL 6106432, at *1 (N.D.N.Y. Jun. 4, 2021) ("Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial.").  "Once any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper."  Condit v. Dunne, 225 F.R.D. 100, 106 (S.D.N.Y. 2004) (citation and internal quotation marks omitted).  "Generally, discovery is only limited when 'sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant' or privileged."  Id. (quoting Melendez v. Greiner, 01-CV-7888 (SAS/DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003) (citations omitted)).

### III.  Parties' Arguments

Plaintiffs move pursuant to Rules 34 and 37[2] seeking "full and complete responses to Requests for Production No. 1, 2, 3, 5, 7, and 8 of [p]laintiffs' Supplemental Request for Production as revised on June 30, 2021 and July 16, 2021." Dkt. No. 33-1 at 3.  Generally, plaintiffs state that "[d]efendant should be compelled to produce all design prints[], drawings, photographs, videotapes, blueprints or other depictions of the design for each and every component of the Subject Pistol excluding

---

[2] Rule 37 governs motions to compel Rule 34 responses.  See Stollman v. Williams, No. 20-CV-8937 (JPC/KNF), 2021 WL 5166404, at *7 (S.D.N.Y. Nov. 5, 2021) ("While the plaintiffs describe their motion as one made pursuant to [Rule 34], the Court understands the plaintiffs' motion to be a motion to compel pursuant to [Rule 37]."); see also FED. R. CIV. P. 37.

the magazine and grip as well as all requested document production in Plaintiffs' Supplemental Request for Production." Id. at 6.  Plaintiffs contend that "[i]n a products liability [case] where a design defect is alleged, plaintiff is entitled to 'broader discovery than, for example, if the claim were solely one of negligent manufacture.'" Id. at 7 (citations omitted).  Plaintiffs state that they "clearly and succinctly plead design and manufacturing defects with the Subject Pistol which could be the result of individual part defects in design or manufacturing." Id. at 8-9.

In opposition, defendant contends generally that plaintiffs have not alleged a manufacturing defect, but rather only a design defect.  See Dkt. No. 36 at 7.  Defendant asserts that any requests for "'all' documents related to the design of the Subject Pistol[]" are improper because plaintiff has not articulated how the documents are "relevant and proportionate to the specific claims of defect in this case[.]" Id. at 1.  More specifically, defendant asserts that "[t]hese requests are not limited to specific component parts or even particular systems within the Subject Pistol." Id. at 4.  Defendant contends that, while the Subject Pistol has "approximately 50 parts[,] . . . the only issue in this case is the 'gap between the hammer and the firing pin.'" Id. at 5.  Furthermore, notwithstanding the signed protective order in place, defendant expresses concerns that its confidential proprietary information might be disclosed inadvertently. See id. at 8.

## IV.  Discussion

### 1.  (Revised) Supplemental Request for Production Number One[3]

Plaintiffs' supplemental request number one initially requested the following:

"Produce all documents, design prints, drawings, photographs, videotapes, blueprints or other depictions of the design of the Subject Pistol."  Dkt. No. 33-4 at 3.  On June 30, 2021, plaintiffs revised supplemental request number one as follows:

> [Produce] all documents pertaining to design, testing, quality assurance, and failure analysis including but not limited to full engineering design prints with dates and revision history, all engineering change notices, design meeting minutes, memos, emails, test protocols, test results, CAD files, investigations of drop fire allegations, history of drop fire allegations, [and] failure analysis . . . up until the time of manufacturing of the Subject Pistol.

Dkt. No. 33-6 at 1-2.

Defendant objected to supplemental request number one on the grounds that is "overbroad in scope (e.g., 'all'), vague (e.g., 'depictions of the design of the Subject Pistol') and seeks information that is not relevant to any party's claim or defense and not proportional to the needs of the case[.]"  Dkt. No. 33-5 at 2.  Defendant contended that the request seeks documents pertaining to parts "that could not be at issue in this lawsuit."  Id.  Notwithstanding, defendant referred plaintiffs "to the previously disclosed

---

[3] Plaintiffs revised their May 21, 2021, supplemental requests on June 30, 2021, and again on July 16, 2021, through written correspondence with defendant's counsel.  See generally Dkt. No. 33-6; Dkt. No. 33-8.  Notably, there are two revisions applicable to most, if not all, of the supplemental requests.  First, on June 30, 2021, plaintiffs included the following revised definitions: (1) "'Failure Analysis' means an investigation of Product (including components thereof) failures by means of diagnostic testing within a standardized test environment and performed by Enphase or its service providers in order to determine the cause of the Product or component's failure where applicable[]"; and (2) "'Quality Data Assurance' means any data collected to assure a degree or level of confidence that the provided data meets the requirements in terms of accuracy, resolution, integrity, safety, completeness and format."  Dkt. No. 33-6 at 1.  Second, on July 16, 2021, plaintiffs again revised their requests by excluding any "documents pertaining to the magazine components and the grips." Dkt. No. 33-8 at 1-2.

confidential design drawings," "Operating Instruction Manual" ("operating manual") and defendant's website.  Id.

Importantly, the operating manual contains multiple exploded view diagrams of the HP22.  See Dkt.  No. 33-13 at 24-27.  Based on the diagrams, there appear to be four general categories of components: "Frame Components," "Slide Components," "Barrels[,] and Magazines."[4]  Id. at 24-27.  There are about 18 individually-numbered components identified as "Barrels and Magazines," which are displayed together in one diagram.  Id. 33-13 at 24.  Similarly, there are around 14 individually-numbered "Slide Components" and about 29 individually-numbered "Frame Components."  Id. at 25-27.  Thus, in total, there appears to be approximately 60 individual components and/or parts that comprise the HP22.  See id. at 24-27.

The design prints defendant produced correspond with seven individual parts and/or components that are identified by name and part number in the operating manual.[5]  See generally Dkt. Nos. 33-13, 14.  Defendant produced design prints for three individual Slide Components: "Slide" ("#202"), "Block Spring" ("#242A"), and "Pin Block" ("#253").[6]  Dkt. No. 31-14 at 1, 5, 7.  Likewise, defendant produced design prints of four individual Frame Components: "Safety" ("#208"), "Trigger Bar" ("#241"), "Safety Spring" ("#225"), and "Safety Block" ("#250").  Dkt. No. 33-14 at 2-4, 6.  Defendant states that these seven components relate to the HP22's "safety system."  Dkt. No. 36 at 3.

---

[4] The operating manual combines the "Barrels" and "Magazines" components under a single exploded view diagram.  Dkt. No. 33-13 at 24.

[5] In support of its motion, plaintiffs filed the seven design prints under seal pursuant to the parties' protective order as they contain defendant's confidential proprietary information.  See Dkt. No. 33-14; Dkt. No. 15.

[6] The Court notes that the "Block Spring" component number is labeled "#242" in the operating manual whereas the corresponding design print is labeled "#242A."  Dkt. No. 33-13 at 27; cf. Dkt. No. 33-14 at 5.

In their memorandum of law, plaintiffs address defendant's relevance and proportionality objections by contending that "[d]efendant's conclusory opinion that the documents pertaining to parts or component parts of the Subject pistol are not relevant or at issue in this lawsuit is not a decision that can be made unilaterally by [d]efendant and must be determined by a complete analysis and rendered expert opinion."  Dkt. No. 33-1 at 8.  Plaintiffs state that they have "plead design and manufacturing defects with the Subject Pistol which could be the result of individual part defects in design or manufacturing."  Id. at 8-9.  They assert that "[a]ll parts and components of the Subject Pistol are positioned relative to the others.  How these parts and components interact and are positioned are certainly necessary and discoverable information to which [p]laintiff[s are] entitled."  Id. at 8.  Furthermore, they assert that "[h]ow the parts are intended to engage each other is at the center of [p]laintiffs' claims and of this lawsuit."  Id. at 9.  More specifically, plaintiffs assert that "[a] dimensional print of parts of the Subject Pistol [is] required to evaluate the relative positions of possibly culpable components."  Id.  They contend that, as such, "[t]rue, correct, and complete design prints and engineering change orders of all parts that control how the parts of the gun work together are required and certainly discoverable in this action."  Id.

Plaintiffs argue that defendant improperly referred to previously disclosed discovery in its response to supplemental request number one.  Dkt. No. 33-1 at 10. They state that, as shown by the exploded views in the HP22 operating manual:

> the thirty (30) or more internal parts are positioned by a frame and by their contact with mating parts and components.  To evaluate how any one part interacts in the system under different scenarios of use and potential failure, the precise dimensions, locations, and limits of travel of all mating parts must be known.  Plaintiff is entitled to disclosure of the design prints and engineering change orders for all these parts and components so that

a complete analysis can be made as to possible failures within the Subject
Pistol that caused its inertia firing and subsequent injuries to [Edward].

Id. at 9-10.  Plaintiffs indicate that the operating manual exploded views confirm that

"there are multiple undisclosed design prints and engineering orders pertaining to parts

and components of the Subject Pistol that [d]efendant has failed to produce to

[plaintiffs]."  Id. at 9.

Plaintiffs state that they also "requested documentation of engineering design

prints with dates and revision history, engineering change notices[,] test results, [and]

failure analysis[.]"  Dkt. No. 33-1 at 10.  They assert that "the previously disclosed

documentation explicitly excludes most of this information[.]"  Id. at 10.  By way of

reference, plaintiffs assert that:

> [l]ooking at the mere seven (7) design prints provided by [d]efendant, you
> can see that the blocks indicating part number, notes, and revisions are
> blank, and [d]efendant has not provided this information or an objection to
> such[.]  The revisions block in the design prints should give the history of
> changes to the part comprised of a reference to the engineering order that
> described the need for the change, the date the change was made, and
> who approved said change.  The [d]efendant's design prints contain none
> of this requested information, and without this crucial information there is
> no ability to determine if the provided prints apply to the evidenced
> components.  Further, change orders (also called engineering change
> notices) and their supporting documentation are required to evaluate the
> design process and what [d]efendant had knowledge of up until the time of
> [Edward's] injury.

Dkt. No. 33-1 at 10.  Plaintiffs contend that "[d]efendant provides no explanation or

objection to providing same."  Id. at 10.

In its opposition brief, defendant reiterates that "a request for 'all' documents

related to the design of the Subject Pistol is not relevant and is disproportionate to

specific claims of defect in this case."  Dkt. No. 36 at 7.  Defendant contends that "the

only issue in this case is the 'gap between the hammer and the firing pin.'"  Id. at 5.  In

10

any event, defendant states that plaintiffs' counsel has been asked "to identify which specific parts they or their expert felt were missing that were relevant . . ." but that "[p]laintiffs refused or were unable to do so."[7]  Id. at 7.

Moreover, defendant argues that plaintiff has not plead a manufacturing defect claim, thus any production responses are relevant only to design defect claims.  See Dkt. No. 36 at 7.  Defendant states that, in relevant part, plaintiffs brought "causes of action for 'Negligence Defective Design,' 'Strict Liability,' and 'Failure to Warn.'"  Id. at 7. Defendant states that "[t]he causes of action and descriptions within the claims all indicate that this is a design-based defect case."  Id.  As an example, defendant points out that Paragraph 10(d) of the Verified Complaint "alleges that the pistol was negligently designed because it failed to incorporate 'a floating firing pin and transfer-bar safety mechanism or some other alternative safety device[.]'"  Dkt. No. 36 at 7; see Compl. at 4.

Defendant contends further that "there is no contention related to alternative feasible designs[]."  Dkt. No. 36 at 6 (footnote omitted).  Defendant argues that plaintiffs' reliance on Fine v. Facet Aerospace Prod. Co., 133 F.R.D. 439, 442 (S.D.N.Y. 1990) is incorrect, and states that "[t]he Fine court recognized that, 'discovery of **alternative designs** may be wide-ranging.'"  Dkt. No. 36 at 6 (citation omitted); see also Dkt. No. 33-1 at 7-8.  Moreover, defendant notes that the Fine court "denied [the] plaintiff's motion to compel because the plaintiff did not specifically allege that the designs they

---

[7] Defendant also notes that supplemental request number one "is nearly identical to" an earlier request in plaintiffs' first production requests served in July, 2020.  Dkt. No. 36 at 3-4.  Defendant states that "[p]laintiffs' counsel appeared satisfied with [d]efendant's response and document production related to the First RFP No. 3, so [d]efendant had no reason to supplement through this request."  Id.  Defendant points out the delay between the initial requests and the supplemental requests but cites no authority and otherwise advances no argument indicating that plaintiffs' motion should be denied on this ground.  See Dkt. No. 36 at 4-8.

sought discovery would have been safer alternatives."  Dkt. No. 36 at 6 (citation omitted).  Defendant points out that the <u>Fine</u> court acknowledged that the moving party did not submit an affidavit of an expert, which could have made such a showing of relevance.  <u>Id.</u> at 6-7.

The Court finds that, while the complaint's first cause of action is titled "Negligence Defective Design," the factual allegations thereunder set forth multiple theories of negligence, not only for negligent design, but also for negligent manufacturing.[8]  Compl. at 2-4, ¶¶ 1-12.  For example, Paragraph 8 of the Verified Complaint alleges that "[d]efendant, as the manufacturer, distributor, and seller of firearms, owed a duty to those who would foreseeably be injured by its firearms, including plaintiff, to use care in the manufacturing . . . ."  <u>Id.</u> at 3, ¶ 8.  Relatedly, Paragraph 9(a) alleges that "[d]efendant, in breach of the duties described above, negligently and carelessly . . . [m]anufactured[,] distributed and sold the single action semi-auto .22lr caliber pistol that was subject to failure during normal use such that the weapon would discharge even though the hammer had been placed in the safety position[.]"  <u>Id.</u> at 3-4, ¶ 9(a).  Mindful that neither party has thoroughly briefed the issue, the Court finds that plaintiffs' Verified Complaint satisfies Rule 8's pleading standards and sufficiently gives defendant fair notice of a manufacturing defect claim.[9]  <u>See</u>

---

[8] "To adequately plead a design defect, a plaintiff must show: (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury."  <u>Reynolds-Sitzer v. EISAI, Inc.</u>, 2022 WL 471530, *3 (N.D.N.Y. Feb. 16, 2022) (citations omitted).  "To plead and prove a manufacturing flaw under either negligence or strict liability, the plaintiff must show that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,' and that the defect was the cause of plaintiff's injury."  <u>Colon ex rel. Molina v. BIC USA, Inc.</u>, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (quoting <u>Caprara v. Chrysler Corp.</u>, 52 N.Y.2d 114, 129 (1981)).

[9] The Court notes also that plaintiffs have repeatedly stated through discovery responses and correspondence with counsel that they have plead a manufacturing defect claim.  <u>See</u> Dkt. No. 30-3 at 2;

Vicenzo v. Wallkill Cent. Sch. Dist., No. 21-CV-308 (GTS/TWD), 2022 WL 913094, at *8 (N.D.N.Y. Mar. 29, 2022) (citations omitted) (discussing that Rule 8 "requires that the pleading contain a statement that 'give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests.'"); FED. R. CIV. P. 8(A)(2).

Furthermore, the Court rejects defendant's argument that "there is no contention related to alternative feasible designs[]."  Dkt. No. 36 at 6.  Paragraph 9(d) of the Verified Complaint specifically alleges that defendant "[f]ailed to manufacture the [HP22] with a floating firing pin and transfer-bar safety mechanism or some other alternative safety device that was more reliable than the half-cock notch used in the weapon."  Compl. at 4, ¶ 9(d).  As such, plaintiffs are entitled to documents regarding the Subject Pistol for review and comparison with alleged alternative feasible designs.  See Lara v. Delta International Machinery Corp., 174 F. Supp. 3d 719, 736 (E.D.N.Y. Mar. 31, 2016) (citations and internal quotation marks omitted) (stating that "[i]n a products liability action, 'the touchstone of an expert's report should be a comparison of the utility and cost of the product's design and alternative designs.'").

Importantly, plaintiffs seek "full engineering design prints with dates and revision history[,]" and "all engineering change notices[,]" relative to "all" HP22 components, except those pertaining to the magazine and grips.  Dkt. No. 33-6 at 1-2; Dkt. No. 33-8 at 1-2.  Plaintiffs contend that the seven design prints defendant provided are

---

Dkt. No. 33-8 at 1.  Moreover, defendant asserted dozens of affirmative defenses applicable to both design and manufacturing product liability claims.  See Answer at 5-10.  Defendant also asserted a general affirmative defense, which states that "[defendant] reserves the right to assert at the time of trial any and all affirmative defenses revealed through discovery."  Id. at 10.  However, to be clear, the Court's finding today does not resolve whether any claims would survive a properly filed motion for dismissal pursuant to Rules 12(c) or 56.

incomplete as they do not contain dates, "revision history," or "engineering change notices."  Dkt. No. 33-1 at 10.

Notably, defendant provided plaintiffs with diagrams that identify each HP22 component individually by name, number, and relative placement. <u>See</u> Dkt. No. 33-13 at 24-27.  Instead of identifying the specific components sought as requested, plaintiffs reiterated their general request for "all" components, excluding only "the magazine components and the grips[,]" without any reference to individual part names or numbers. Dkt. No. 33-8 at 2.  As defendant points out, "[p]laintiffs have not demonstrated a nexus between 'all'" of the HP22 parts and components and the claims asserted.  Dkt. No. 36 at 6.

The pleadings allege that defendant "[f]ailed to manufacture the [HP22] with a floating firing pin"; hence, documents relative to the HP22's "firing pin" components are relevant and proportionate to the needs of the case.  Dkt. No. 1-1 at 4, ¶ 9(d).  Similarly, there are claims and defenses concerning the HP22's "transfer-bar safety mechanism[,]" "the half-cock notch used in the weapon[,]" and "the 'gap between the hammer and the firing pin.'"  Dkt. No. 1-1 at 4, ¶ 9(d); Dkt. No. 36 at 5.  Thus, while plaintiffs have not demonstrated entitlement to documents regarding "all" HP22 parts, components and/or systems, plaintiffs have sufficiently articulated that "full engineering design prints with dates and revision history" and "all engineering change orders," for the HP22's "firing pin," "hammer," "safety," and "cocking" components and systems are discoverable in this case.

Additionally, supplemental request number one seeks any "design meeting minutes, memos, emails, test protocols, test results, [and] CAD files[,]" pertaining to the

14

HP22's "design, testing, quality assurance, and failure analysis[.]"  Dkt. No. 33-6 at 1.

However, unlike the portion of supplemental request number one that seeks design

prints and engineering change orders, for which plaintiffs provided a relatively detailed

explanation in their brief regarding their relevance and proportionality, plaintiffs have not

articulated why the remaining documents are discoverable.  See Dkt. No. 33-1 at 8-10.

Thus, plaintiffs' request for further discovery in this regard cannot be granted.  See

Perkins v. Chelsea Piers Mgmt., No. 11-CV-8998 (ALC/JCF), 2012 WL 4832814, at *1

(S.D.N.Y. Oct. 10, 2012) (citations omitted) (explaining that the "fail[ure] to provide any

argument as to why the documents [the plaintiff] is seeking are relevant to his case . . .

is fatal to his motion to compel.").

Accordingly, plaintiffs' motion to compel responses to supplemental request for

production number one is granted insofar as discussed above.  As such, defendant

must produce "full engineering design prints with dates and revision history" and "all

engineering change orders," for the HP22's "firing pin," "hammer," "safety," and

"cocking" components and systems, limited to up until the time of manufacture of the

Subject Pistol.


### 2.  (Revised) Supplemental Request for Production Number Two

Plaintiffs' supplemental request number two sought the following: "Produce all

documents regarding any and all engineering change orders related to each and every

part of the Subject Pistol."  Dkt. No. 33-4 at 3.  Plaintiffs revised the supplemental

request on June 30, 2021, as follows: "Produce all documents regarding any and all

engineering change orders related to each and every part and component of the

Subject Pistol from the time period up until the time of manufacturing the Subject Pistol."
Dkt. No. 33-6 at 2.

Defendant objected initially on the grounds of "overbroad in scope" and "not
limited to a reasonable and relevant time period."  Dkt. No. 33-5 at 3.  Additionally,
defendant contended that "evidence of subsequent design changes is inadmissible
when the basis of plaintiffs' strict liability claim is a design defect or as a subsequent
remedial measure."  Id. (citations omitted).  Following plaintiffs' revision limiting the
request in time, defendant maintained its objection that plaintiffs request for "all" such
documents is "overly broad" and requested that plaintiffs identify drawings they
"believe[] are missing from defendant's prior production[.]"  Dkt. No. 33-9 at 1.

Throughout plaintiffs' brief, the arguments in support of the "engineering change
orders related to each and every part and component of the Subject Pistol" are
substantively the same arguments relative to the "engineering change notices" sought in
supplemental request number one.  See Dkt. No. 33-1 at 8-10.  In fact, plaintiffs state
that "engineering change orders" are "also called engineering change notices[.]"  Id. at
10.  Accordingly, the motion to compel responses to plaintiffs' supplemental request
number two is granted to the same extent as supplemental request number one—that
is, defendant must produce any engineering change orders or notices relative to the
"firing pin," "hammer," "safety," and "cocking" components and systems, limited to "up
until the time of manufacture of the Subject Pistol."  Dkt. No. 33-6 at 1-2.

16

### 3.  (Revised) Supplemental Request for Production Number Three

Plaintiffs' supplemental request number three stated: "Produce all records or other papers/digitally stored information, meeting minutes, transcripts, notes, or other depiction of any design meeting regarding the Subject Pistol."  Dkt. No. 33-4 at 3.  Plaintiffs revised the supplemental request on June 30, 2021, to reflect: "Produce all documents, records or other papers/digitally stored information, meeting minutes, transcripts, notes, or other depiction of any design meeting regarding the Subject Pistol from the time period up until the time of manufacturing of the Subject Pistol."  Dkt. No. 33-6 at 2.

Defendant objected on the grounds of the request being "overbroad in scope," "not limited to a reasonable and relevant time period," and relevance and proportionality, stating that supplemental request number three "seeks documents not pertaining to parts or component parts of the Subject Pistol that could not be at issue in this lawsuit."  Dkt. No. 33-5 at 3.  Nonetheless, defendant stated that "no responsive documents exist."  Id.  Plaintiffs reference supplemental request number three when discussing the relevance of their requests for "documents pertaining to parts or component parts of the Subject [P]istol" and "engineering design prints with dates and revision history, engineering change notices[,] test results, failure analysis, and design parts."  Dkt. No. 33-1 at 8, 10.  Plaintiffs do not explain how, or to what extent, defendant's assertion that there are "no responsive documents" is inaccurate.  See generally id.  Accordingly, to the extent plaintiffs seek to compel responses to supplemental request number three, they have put forth no argument to compel further disclosure and "the court cannot compel production of evidence that does not exist."

Johnson v. Miller, No. 20-CV-622 (LEK/ATB), 2021 WL 4803647, at *2 (N.D.N.Y. Sept. 2, 2021); see also OnActuate Consulting Inc. v. Aeon Nexus Corp., No. 20-CV-508 (LEK/CFH), 2022 WL 866418, at *8-9 (N.D.N.Y. Mar. 23, 2022) (collecting cases). Thus, plaintiffs' motion to compel responses to supplemental request number three is denied.

### 4.  (Revised) Supplemental Request for Production Number Five

On May 21, 2021, plaintiffs served supplemental request number five, which stated: "Produce all documents, records or other papers/digitally stored information regarding quality assurance data regarding the Subject Pistol."  Dkt. No. 33-4 at 4.  On June 30, 2021, plaintiffs revised the supplemental request with the following: "Plaintiff will limit the time period to include responsive documents up until the time of manufacturing of the Subject Pistol."  Dkt. No. 33-6 at 3.

Defendant objected to supplemental request number five on the grounds that it was overbroad, vague, not limited in time, and sought information not relevant and proportional to the needs of the case "as there is no indication or claim that any part of the Subject Pistol failed in any manner."  Dkt. No. 33-5 at 4.  As to the vagueness objection, defendant stated that the term "quality assurance data" was undefined.  Id. Nonetheless, defendant referred to plaintiffs to "the previously produced California Certification and Handgun Testing Program and Roster related documents (PA000037-PA000063)."[10]  See id.  Furthermore, defendant stated that "all pistols produced by

---

[10] Neither party submitted the documents identified as PA000037-PA000063 for the Court's review.  See generally Dkt. Nos. 33 and 36.

[d]efendant are function checked and test fired prior to the final inspection, however, no records are maintained for these routine activities."  Id.

Plaintiffs make no substantive argument in their brief specific to supplemental request number five.  See generally Dkt. No. 33-1.  In the one instance where plaintiffs attempt to address this request, they discuss defendant's response to supplemental request number one, which referred plaintiffs to the previously disclosed design drawings, operating manual, and website.  See id. at 8.  Plaintiff does not otherwise argue that defendant's production of the Handgun Testing Program and Roster was insufficient or that they believe that defendant is withholding documents relevant to this request.  See generally Dkt. No. 33-1.  With no discernable argument addressing the alleged insufficiencies of defendant's responses, the Court denies plaintiffs' motion to compel further responses to supplemental request number five.  See Dkt. No. 33-5 at 4-5.

### 5.  (Revised) Supplemental Request for Production Number Seven

Plaintiff's supplemental request number seven states: "Produce all documents, records or other papers/digitally stored information regarding failure analysis related to the drop test, exposed hammer test, jar-off test and rotation test performed on the Subject Pistol.  Dkt. No. 33-2 at 3.  Following defendant's objections, plaintiffs stated on June 30, 2021, that they "will limit the time period to include responsive documents up until the time of manufacturing of the Subject Pistol."  Dkt. No. 33-6 at 3.

Defendant objected to supplemental request number seven on the grounds that it is overbroad, not limited in time, and seeks information that is "not relevant to any

party's claim or defense and not proportional to the needs of the case[.]"  Dkt. No. 33-5 at 6.  Notably, defendant also objected on vagueness grounds, citing that "failure analysis" was insufficiently defined.  Dkt. No. 33-5 at 6.  Defendant added that "there is no indication or claim that the incident involving [Edward] was the result of a jar-off discharge[,]" stating that "as [Edward] testified that the Subject Pistol's hammer was not cocked at the time of the incident (jar-off test), he did not maintain the Subject Pistol in a safe carry condition (exposed hammer test), and this firearm is not a rifle or shotgun (rotation test)."  Id.  Notwithstanding, defendant referred plaintiffs "to the previously produced California Certification and Handgun Testing Program and Roster related documents[.]"  Id.

Plaintiffs argue that defendant's reference to previously disclosed documentation is non-responsive to supplemental request number seven.  See Dkt. No. 33-1 at 11.  They contend that "the failure analysis of the drop tests performed on this gun are highly relevant and[, that] even after limiting time period to 'responsive documents up until the time of manufacturing of the Subject Pistol[,]'" defendant failed to supplement its response.  Id.

In its opposition papers, defendant reiterates that it has already provided responses to supplemental request number seven.  See Dkt. No. 36 at 8.  Defendant asserts that plaintiffs' requests for "documents related to 'the drop test, exposed hammer test, jar-off test and rotation test performed on the Subject Pistol[,]" are without foundation.  Id.  Defendant contends that it "has never suggested in discovery that all these tests were performed by [d]efendant on the Subject Pistol[,]" but that, in any event, such information is irrelevant because "[p]laintiffs claim that the subject incident

was the result of the Subject Pistol being dropped." Id.  Defendant states that, pursuant to California state regulations, the HP22 must "pass certain function and safety related tests performed by a State certified laboratory, an independent party, with the results sent directly to California." Id. (footnote omitted).  Defendant asserts that while "[t]he California tests include a drop testing protocol" that the HP22 was subject to, "[d]efendant is not in the possession of the requested test results." Id. at 8-9. Defendant notes that the HP22 model "is listed on California's list of handguns that have 'passed firing, safety, and drop tests and is certified for sale in California by the Department of Justice." Id. at 9 (citation omitted).  Defendant states that "[p]resumably, the State of California maintains a record of these test results." Id.

The Court finds that supplemental request number seven's demand for "failure analysis[,]" including "drop," "exposed hammer," "jar-off," and "rotation" tests, as limited "up until the time of manufacturing of the Subject Pistol," is proper.  Dkt. No. 33-1 at 11. Defendant acknowledges that "firing, safety, and drop tests" were performed on the HP22 pursuant to California State regulations.  Dkt. No. 36 at 8-9.  While defendant states that it is not in possession "of the requested test results[,]" and has directed plaintiffs to the California agency that maintains such results, the Court notes that supplemental request number seven is not limited to "test results," but rather "all documents, records or other papers/digitally stored information regarding failure analysis related to" such tests.  Dkt. No. 33-2 at 3; Dkt. No. 36 at 9.  Considering this is a products liability case involving an allegedly defective firearm, plaintiffs are entitled to records that indicate precisely what safety and function tests were performed on the Subject Pistol and the results therefrom.  If no such documents exist, whether in whole

21

or in part, or if such documents are not in the possession, custody, or control of defendant, its agents, subsidiaries, or assigns, then defendant is directed to affirm as much in its written responses within 30 days of the filing of this decision.  See N.Y. ex rel. Boardman v. National R.R. Passenger Corp., 233 F.R.D 259, 267 (N.D.N.Y. 2006) (quoting FED. R. CIV. P. 34(a)(1)) ("Rule 34 is rather clear that where documents are in the 'possession, custody, or control of a party,' they must be produced."); see also Ford v. Rensselaer Polytechnic Inst., No. 20-CV-470 (DNH/CFH), 2022 WL 715779, at *17 (N.D.N.Y. Mar. 10, 2022) (ordering production of requested documents "and if no such documents exist, defendant is to clarify as such in writing to plaintiffs within 30 days of the filing date of this decision.").

Accordingly, to the extent defendant possesses or has reasonable access to "documents, records or other papers/digitally stored information regarding failure analysis," including "drop," "exposed hammer," "jar-off," and "rotation" tests, plaintiffs are entitled to disclosure of same.

### 6.  (Revised) Supplemental Request for Production Number Eight

Plaintiff's supplemental request number eight states: Produce all documents, records or other papers/digitally stored information regarding all customer complaints of the Subject Pistol.  Dkt. No. 33-4 at 4.  Thereafter, on June 30, 2021, plaintiffs revised the supplemental request as such: "Produce all documents[,] records or other papers/ digitally stored information regarding all customer complaints of drop fire and jar-off allegations of the Subject Pistol."  Dkt. No. 33-6 at 3.

Defendant first objected to supplemental request number eight on the basis that it seeks "documents related to prior complaints or lawsuits that are not substantially similar to the claims, circumstances, events, and allegations alleged in [p]laintiff's [c]omplaint."  Dkt. No. 33-5 at 6.  Nonetheless, defendant stated that "[it] is not aware of any prior complaints of the HP-22A pistol discharging when dropped and striking the ground or other hard surface.  Defendant has produced over 500,000 HP22 and HP22A pistols and never received a complaint or notification of a drop fire situation with these firearms."  Id. at 7.

Defendant argues that "[t]his type of evidence is not only inadmissible, but it is not discoverable[,]" as "discovery of other claims against defendants should be limited to claims similar in nature to those asserted by plaintiff." Dkt. No. 36 at 9 (citation omitted).  Defendant contends that "the only discovery permitted of prior claims against Phoenix Arms should be those involving the subject model pistol (or similarly designed models) where is alleged that the firearm discharged when dropped and after striking the ground or some other hard surface."  Dkt. No. 36 at 9.  Defendant acknowledges that "[p]laintiffs agreed to limit this request to 'drop fire or jar-off allegations,'" and that defendant provided responses "regarding the only prior lawsuit related to this model firearm."  Dkt. No. 36 at 10.  Defendant contends that it "has fully complied with" the request.  Id.

Plaintiffs acknowledge that they initially sought production of "all customer complaints regarding the Subject Pistol" but subsequently limited their request to "all customer complaints of drop fire and jar-off allegations[.]"  Dkt. No. 33-1 at 12.  Nevertheless, plaintiffs argue that "[d]efendant improperly limited the production of

supplemental request number eight in its responses" in asserting that "there was not a 'complaint or notification of an incident of a drop fire situation with these firearms.'"  Dkt. No. 33-1 at 11.  Plaintiff contends that "[a]ll complaints regarding the Subject Pistol are highly relevant in this matter[.]"  Id. at 12.

The Court finds that defendant sufficiently responded to supplemental request number eight insofar as stating that "[it] is not aware of any prior complaints of the HP-22A pistol discharging when dropped and striking the ground or other hard surface, or any other "complaint or notification of a drop fire situation[.]"  Dkt. No. 33-5 at 7.  See Johnson, 2021 WL 4803647, at *2 (explaining that "the court cannot compel production of evidence that does not exist."); see also OnActuate, 2022 WL 866418, at *8-9 (collecting cases).  Plaintiffs have cited no authorities to support their contention for further discovery in this regard.  See Dkt. No. 33-1 at 11-12.  Other than stating, in a conclusory manner, that "all" complaints are "highly relevant," plaintiffs have failed to meet their burden of showing why this information is relevant.  Dkt. No. 33-1 at 11; see also Citizens Union, 269 F. Supp. 3d at 139 (citing Fireman's Fund, 284 F.R.D. at 135 (citations omitted).

Accordingly, plaintiffs' motion to compel responses to supplemental request number eight is denied.


**V. Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiffs' motion to compel (Dkt. No. 33) be **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED**, that plaintiff's motion to compel (Dkt. No. 33), to the extent it seeks further responses to plaintiffs' supplemental requests for production numbers three, five, and eight, is hereby **DENIED**; and it is further

**ORDERED**, that plaintiff's motion to compel (Dkt. No. 33) responses to supplemental request numbers one, two, and seven, is **GRANTED**, as discussed herein; and it is further

**ORDERED**, that defendant Phoenix Arms must produce to plaintiffs Edward and Jean Ann Rhodes "full engineering design prints with dates and revision history" and "all engineering change orders," for the HP22's "firing pin," "hammer," "safety," and "cocking" components and systems, limited to up until the time of manufacture of the Subject Pistol; and it is further

**ORDERED**, that defendant Phoenix Arms must produce to plaintiffs Edward R. Rhodes and Jean Ann Rhodes, to the extent defendant Phoenix Arms, its agents, subsidiaries, or assigns, possesses or has reasonable access to, documents, records or other papers/digitally stored information regarding failure analysis, including "drop," "exposed hammer," "jar-off," and "rotation" tests for the HP22; and it is further

**ORDERED**, that to the extent any of the information requested in supplemental request numbers one, two, and seven, does not exist or is not in the possession or control of defendant Phoenix Arms, whether in whole or in part, defendant Phoenix Arms is directed to affirm in its written responses what efforts were taken in attempting to locate same; and it is further

**ORDERED**, that defendant Phoenix Arms shall comply with the orders directed herein within thirty (30) days of the date that this Order is entered.

**IT IS SO ORDERED**.

Dated: June 9, 2022
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge